**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO.: 1:25-CV-00096-CCE-JLW**

MICHAEL WAMBOLD and ROBERT GUPTILL, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

RTA MEDIA HOLDINGS, LLC d/b/a RACING AMERICA,

Defendant.

Case No. 1:25-cv-96

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT RTA MEDIA HOLDINGS, LLC'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f), AND/OR 23(c)(1)(A)**

# TABLE OF CONTENTS

INTRODUCTION .... 1

STATEMENT OF FACTS .... 2

ARGUMENT .... 4

A. Defendant's Motion Should be Dismissed for Failure to Comply With This Court's Orders .... 4

B. This Court Should Not Consider the 2025 TOS Attached to The Smith Declaration Because Its Authenticity And Applicability to Plaintiffs is Disputed .... 6

C. Whether Plaintiffs Consented to Particular Terms Is Not Ripe for Resolution on a Motion to Dismiss .... 8

CONCLUSION .... 11

# TABLE OF AUTHORITIES

**Cases**

*American Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228, 133 S. Ct. 2301, 186 L. Ed. 2d 417 (2013) ........ 10

*Ballard v. Carlson*,
882 F.2d 93, (4th Cir. 1989) ........ 4

*Blankenship v. Manchin*,
471 F.3d 523 (4th Cir. 2006) ........ 7

*Castro v. Goggins*,
No. 1:16CV10, 2016 WL 4508349, (M.D.N.C. Aug. 26, 2016) ........ 9

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
629 F. Supp. 3d 352, (M.D.N.C. 2022) ........ 6, 8

*Greene v. OneMain Fin. Grp., LLC*,
No. 1:17-CV-848, 2018 U.S. Dist. LEXIS 190201, 2018 WL 5831681, (M.D.N.C. Nov. 7, 2018) ........ 10

*Howard v. Lab'y Corp. of Am.*,
No. 1:23-CV-00758, 2024 WL 4250677, (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) ........ 8

*Jackson v. Fandom, Inc.*,
No. 22-cv-04423-JST, 2023 WL 4670285, (N.D. Cal. July 20, 2023) ........ 6

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) ........ 10

*Moreno v. Expedia*,
No. 3:18CV-105, 2018 U.S. Dist. LEXIS 104161, 2018 WL 3059617, (W.D.N.C. June 20, 2018) ........ 10

*Morrison v. Yippee Ent., Inc.*,
756 F. Supp. 3d 842, (S.D. Cal. 2024) ........ 10

*Murray v. Deerfield Mobile Home Park, LLC*,
277 N.C. App. 480, (N.C. App. 2021) ........ 8

*Optimum Constr., Inc. v. Harbor Bus. Compliance Corp.*,
No. MJM-21-2432, 2022 WL 4608170, (D. Md. Sept. 30, 2022) ........ 10

*Paskowitz v. Arnall*,
No. 3:18-cv-00096-KDB-DSC, 2019 WL 3841999, (W.D.N.C. Aug. 15, 2019) ...................... 6

*Rogers v. Tug Hill Operating, LLC*,
76 F.4th 279, (4th Cir. 2023), *cert. denied*, 144 S. Ct. 818, 218 L. Ed. 2d 28 (2024)................ 9

*Tejon v. Zeus Networks, LLC*,
725 F. Supp. 3d 1351, (S.D. Fla. 2024) ................................................................ 10

*Watkins v. Carr*,
No. PX-17-0819, 2018 WL 10741730, (D. Md. Jan. 12, 2018) ............................................ 10

*Williams v. Potomac Family Dining Grp. Operating Co., LLC*,
No. GHJ-19-1780, 2019 WL 5309628 (D. Md. Oct. 21, 2019) ............................................. 7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597, (4th Cir. 2015) ........................................................................ 6

**Statutes**

18 U.S.C. § 2710........................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................. 1, 6
Fed. R. Civ. P. 12(f)..................................................................................... 1
Fed. R. Civ. P. 23(c)(1)(A) ............................................................................ 1
M.D. N. Carolina Civ. LR. 7.6.......................................................................... 6

Plaintiffs Michael Wambold and Robert Guptill ("Plaintiffs") submit this response in opposition to Defendant RTA Media Holdings, LLC's ("Defendant's") Motion to Dismiss ("Motion") their Class Action Complaint (the "Complaint") pursuant to FRCP 12(b)(6), 12(f), and/or 23(c)(1)(A).

## INTRODUCTION

Defendant's Motion rests on a single, flawed premise: that Plaintiffs consented to a class action waiver. This argument disregards both the procedural posture of the case and the factual disputes concerning consent. At this stage, Defendant raises issues that are inherently factual and inappropriate for resolution on a motion to dismiss.

The circumstances here raise serious doubts as to whether Plaintiffs were ever clearly and unambiguously presented with class action waiver terms, or whether those terms were sufficient to bind the parties in the first instance. As the party seeking consent as a defense to Plaintiffs' claims, it is Defendant's burden to provide evidence that Plaintiffs plausibly agreed to a class action waiver before Plaintiffs were harmed by Defendant's use of tracking software. Defendant's Motion only includes the terms of service which was updated ***after*** the Complaint was filed (the "2025 TOS"). *See* Exhibit A to the Declaration of Colin Smith in Support of Defendant RTA Media Holdings, LLC's Motion to Dismiss Class Action Allegations pursuant to Fed. R. Civ. P. 12(b)(6), 12(f), and/or 23(c)(1)(A) (hereinafter "Smith Decl."). This Court should not take notice of this document at the pleading stage and Plaintiffs respectfully request that this exhibit be stricken from the record.

Absent the 2025 TOS, any earlier operative versions of the terms of service ("TOS"), an examination of the differences between said versions, or evidence of Plaintiffs' actual assent, Defendant's Motion cannot be resolved at the pleading stage. The parties must be permitted to develop a factual record to determine whether any class action waiver is enforceable.

Finally, Defendant filed its Motion without adequately meeting and conferring with Plaintiffs, in direct contravention of this Court's prior orders. Plaintiffs were prepared to cooperate in developing the evidentiary record that Defendant now seeks to avoid. Even if the Court were inclined to consider Defendant's Motion, Plaintiffs should be granted leave to amend the Complaint to clarify their position that they did not consent to any class action waiver.

## STATEMENT OF FACTS

Defendant owns and manages a video streaming website at https://www.racingamerica.tv/ (the "Website"), which offers live and on-demand grassroots racing, Cup Team news and content, and behind the scenes access to all things racing. Compl. ¶ 29.

On the Website, Defendant utilized tracking tools, including Meta's tracking Pixel (the "Pixel"), to intercept and disclose consumers' search terms, video watching information, and personally identifiable information (collectively, "Sensitive Information") without seeking or obtaining consumers' consent (the "Tracking Tools"). *See, e.g., id.* ¶¶ 8-11. The Website's use of the Tracking Tools resulted in violations of the

Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), state and federal wiretap statutes, and invasions into consumers' privacy. *Id.*

The Website offers users the ability to sign up for free newsletters by providing their email addresses, or pay money to obtain a membership to Racing America's streaming service (the "Subscribers"). *Id.* ¶¶ 2-3. Plaintiffs Michael Wambold and Robert Guptill subscribed to the Website, as well as purchased and viewed prerecorded video content on the Website. *Id.* ¶¶ 27-28.

Defendant chose to work with Vimeo, Inc. ("Vimeo") and made use of Vimeo's "over the top" ("OTT") platform, which allows website owners, like Defendant, to host and stream video content on their websites for their subscribers to access. *Id.* ¶¶ 6-7. Defendant maintained control over the Website, including over decisions to implement the Tracking Tools and decisions relating to the Website's TOS, privacy policy, and cookie consent banners. *Id.* ¶¶ 77-102.

Plaintiffs used the Website for its intended purpose of accessing and viewing prerecorded video content. *Id.* ¶¶ 27-28. Because of Defendant's decision to implement Tracking Tools on the Website, Plaintiffs' Sensitive Information was unlawfully intercepted by and disclosed to third parties, such as Facebook, without Plaintiffs' consent. *Id.* ¶¶ 16-18, 23.

Plaintiffs filed their Class Action Complaint on these allegations on February 7, 2025. ECF No. 1. Plaintiffs consented to extend Defendant's deadline to respond to the Complaint three times. ECF Nos. 7, 11, and 15. In granting the extensions, the Court ordered that, before filing any motion to dismiss, defense counsel shall initiate a meet-and-

confer with Plaintiffs' Counsel. *See* Text Orders, ECF Nos. [May 5, 2025] and [June 3, 2025]. Defense counsel only informed Plaintiff of their intent to file a motion to dismiss at 1:30PM on June 30, 2025, the same day the Defendant filed its Motion to Dismiss.

## ARGUMENT

### A. Defendant's Motion Should be Dismissed for Failure to Comply With This Court's Orders

This Court should dismiss Defendant's Motion on estoppel grounds due to its failure to comply with this Court's Orders requiring that Defendant initiate a meet-and-confer with Plaintiffs' counsel "about the basis of any such anticipated motion and whether disputed issues can be resolved or narrowed by an amended complaint." Text Orders, ECF Nos. [May 5, 2025] and [June 3, 2025].

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989). Defendant sidestepped, at best, this Court's explicit orders requiring a pre-motion meet and confer. This omission is not a technicality. It, in fact, deprived Plaintiffs and the Court of an opportunity to narrow or eliminate disputes. Adding insult to injury, Plaintiffs agreed in good faith to extend Defendant's time to respond three times, extending their original time to answer or respond from May 7, 2025 to June 30, 2025. ECF Nos. 7, 14, 15. Had Defendant complied with the meet-and-confer requirement, Plaintiffs could have clarified or amended their allegations, potentially avoiding unnecessary motion practice before this Court or otherwise narrowing or resolving the dispute without the need

for judicial intervention. An email from Defendant's counsel sent a mere few hours before filing its Motion does not fulfill this Court's meet and confer requirement.

Further underscoring Defendant's lack of good faith, Defendant never responded to Plaintiffs' initial demand letter and invitation for pre-suit discussions dated December 31, 2024. *See* Declaration of Mark S. Reich in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss (hereinafter, the "Reich Decl.") ¶¶ 5-8. Regardless, Plaintiffs have remained cooperative throughout these proceedings. Plaintiffs voluntarily provided the email addresses of the named Plaintiffs in correspondence dated June 19, 2025, enabling Defendant to investigate and validate Plaintiffs' claims prior to filing its Motion to Dismiss. *See* Smith Decl. ¶ 7; Reich Decl. ¶ 12. Plaintiffs did so expressly to facilitate meaningful discussions, as contemplated by this Court's Orders. *See* Text Orders, ECF Nos. [May 5, 2025] and [June 3, 2025].

Moreover, on June 30, 2025—the same day Defendant filed its Motion—Defendant submitted a statement claiming compliance with the Court's orders, claiming it had "initiated a meet-and-confer with Plaintiffs' counsel about the basis of its Motion to Dismiss." *See* ECF. No. 18. No such meet and confer meaningfully occurred before filing the Motion, as expressly required by the Court. Defendant's eleventh-hour filing underscores the reason for this Court's orders, as the parties are now forced to litigate issues that could—and should—have been resolved earlier through proper cooperation.

### B. This Court Should Not Consider the 2025 TOS Attached to The Smith Declaration Because Its Authenticity And Applicability to Plaintiffs is Disputed

Courts in the Fourth Circuit have held that reliance on materials outside the pleadings—absent proper incorporation by reference or judicial notice—improperly converts a motion to dismiss into one for summary judgment. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). However, a court may consider extrinsic evidence at the Rule 12(b)(6) stage if the evidence is integral to the complaint and its authenticity is not disputed. *Id.* at 606-07; *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363 (M.D.N.C. 2022) (explaining that a document attached to a motion to dismiss may be considered only if it is "integral to and explicitly relied on in the complaint" and if "the plaintiffs do not challenge [the document's] authenticity"); *see also Paskowitz v. Arnall*, No. 3:18-cv-00096-KDB-DSC, 2019 WL 3841999, at *10 (W.D.N.C. Aug. 15, 2019) (granting a motion to strike exhibits, attached to a declaration, submitted at the motion-to-dismiss stage where the exhibits failed to meet the standards under Federal Rule of Evidence 201).

Plaintiffs challenge the authenticity of the 2025 TOS attached to the Smith Declaration as Exhibit A and move to strike the exhibit from the record.[1] The 2025 TOS is neither referenced in the Complaint nor authenticated as the version Plaintiffs actually

[1] Per Local Rule Sec. 7.6, "[r]ather than filing a motion to strike, a party may assert evidentiary objections inits response or reply memorandum to factual allegations contained in memoranda or replies supporting or opposing motions to dismiss, motions for summary judgment, and other motions." Plaintiffs raise such objections here.

encountered on the Website. *See Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (declining to take judicial notice where it was "unclear whether the webpages, Terms of Use, and Privacy Policy submitted" were the same ones the plaintiff actually saw). In fact, the document is expressly marked "Last updated: April 2025" (Smith Decl., Ex. A at 1)—two months ***after*** Plaintiffs' Complaint was filed. The Smith Declaration offers no sworn testimony establishing: (1) whether the 2025 TOS is the exact version Plaintiffs were presented with; (2) how many different versions of the TOS existed; or (3) whether Plaintiffs ever saw—or agreed to—the terms at issue.

Defendant's reliance on *Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006), is misplaced. *Blankenship* involved judicial notice of a newspaper article—not a contested version of a TOS—and the Fourth Circuit expressly cautioned against resolving factual disputes through judicial notice. *Id.* at 529 ("[W]hile we may take judicial notice of the general proposition that newspapers tend to place important stories on their front pages, there is no evidence in the record indicating why the Gazette Article was placed at page C6. Such a matter . . . is not proper at this stage of the proceedings[.]"). Accordingly, Defendant's contention that Plaintiffs cannot meet Rule 23's requirements for class certification because they purportedly assented to a class action waiver is premature.[2] *See* MTD at 9.

[2] Defendant's citation to *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GHJ-19-1780, 2019 WL 5309628 (D. Md. Oct. 21, 2019), is similarly unpersuasive and readily distinguishable, as the case did not involve a class action waiver or any dispute regarding the applicability of such a provision within a TOS.

### C. Whether Plaintiffs Consented to Particular Terms Is Not Ripe for Resolution on a Motion to Dismiss

The issue of consent is a factual matter that cannot be resolved at the pleading stage. *See Howard v. Lab'y Corp. of Am.*, No. 1:23-CV-00758, 2024 WL 4250677, at *10 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) ("Even if the Court were to assume that these policies were integrally related to the [a]mended [c]omplaint and . . . dated within the relevant time period of this case—which they are not—consideration of them on a motion to dismiss for the purpose [d]efendants propose would still be inappropriate."); *see also Garnick*, 629 F. Supp. 3d at 363 ("This court declines to make such a factual inquiry at [the motion to dismiss] stage.").

As an initial matter, Defendant seeks to enforce the class action waiver of an alleged contract. *See* MTD at 15-17. Thus, it is Defendant's burden to show the existence of a valid contract. *Murray v. Deerfield Mobile Home Park, LLC*, 277 N.C. App. 480, 487 (N.C. App. 2021) ("Generally, a party seeking to enforce a contract has the burden of proving the essential elements of a valid contract."). Defendant has not met its burden.

Defendant has failed to establish a timeline for when the 2025 TOS were in place, and whether Plaintiffs' purported acceptance of any terms occurred after the 2025 TOS became the operative agreement. Indeed, an earlier version of the TOS was active as recently as December 27, 2024 (the "2022 TOS")—one that Plaintiffs were far more likely

to have encountered given the timing of their allegations.[3] The 2022 TOS differs drastically from the 2025 TOS. For example, the 2022 TOS states: "This ***Vimeo*** Terms of Service Agreement (the 'Agreement' or 'Terms of Service') is made ***between Vimeo.com, Inc.*** ('Vimeo,' 'we,' 'us,' or 'our') and you, our customer ('you' or 'your')." *See* Reich Decl. ¶ 18, Ex. 1 at 1. (emphasis added). In fact, the 2022 TOS makes no mention of RTA Media Holdings, LLC at all. Accordingly, the plain language of the 2022 TOS indicates that Plaintiffs would have understood themselves to be contracting with Vimeo.com, Inc.—not the Defendant in this case. *See Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 818, 218 L. Ed. 2d 28 (2024) (reversing district court's grant of defendant's motion to compel arbitration where defendant was not party to the arbitration agreement presented in the terms of service). This understanding is further reinforced by the Notices section of the 2022 TOS, which directs users to "send any notices of a legal nature to legal@vimeo.com or at Vimeo.com, Inc. Attention: Legal Department, 330 West 34th Street, 5th Floor, New York, NY 10001." *See* Reich Decl. ¶ 25, Ex. 1 at 9. This instruction only underscores that the contracting party was Vimeo.com, Inc.—not Defendant.[4] It is telling that Defendant fails to identify any version of the Terms of Service

---

[3] Defendant asserts that Plaintiff Guptill became a subscriber in September 2023. Smith Decl. ¶ 7. While Defendant claims that Plaintiff Wambold subscribed in April 2025, it does not clarify whether this occurred before or after the implementation of the 2025 Terms of Service. *See id.* Defendant failed to clarify whether these subscriptions were free newsletters or paid subscriptions, or otherwise provide the court with any dates of renewal or purchase, or any details of the presentation of terms for each of those transactions. *See id.* ¶ 8.

[4] Under North Carolina law, a valid and enforceable contract requires a "meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." *Castro v. Goggins*, No. 1:16CV10, 2016 WL 4508349, at *5 (M.D.N.C. Aug. 26, 2016).

predating the 2025 TOS—likely because Vimeo, not Defendant, was listed as the contracting party in all prior versions.

Lastly, even assuming the parties could pinpoint the specific version of the Terms of Service that Plaintiffs encountered, Defendant would still need to establish that Plaintiffs were on inquiry notice of the relevant terms—another inherently fact-intensive determination that cannot be resolved at the motion to dismiss stage. *See Optimum Constr., Inc. v. Harbor Bus. Compliance Corp.*, No. MJM-21-2432, 2022 WL 4608170, at *5 (D. Md. Sept. 30, 2022) (denying defendant's motion to dismiss). Whether an online agreement puts users on inquiry notice depends on factors such as the website's design, the placement and visibility of the terms-of-use link, font size, and whether a user would necessarily have encountered the terms during normal use.[5] *See Watkins v. Carr*, No. PX-17-0819, 2018 WL 10741730, at *3 (D. Md. Jan. 12, 2018). Courts evaluating similar Vimeo OTT terms of use have repeatedly found a lack of inquiry notice. *See Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351, 1357 (S.D. Fla. 2024); *see also Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 851 (S.D. Cal. 2024).

---

In addition to the inconsistencies related to the parties to the TOS, Section 11.1 of the 2022 TOS dictates that any disputes relating to the TOS or use of the Website will be governed by New York law. *See* Reich Decl. ¶ 22, Ex. 1 at 7. However, Section 10.1 of the 2025 TOS provides for North Carolina law to govern. (Smith Decl., Ex. A at 5.).

[5] Plaintiff Wambold does not recall ever seeing a class action waiver—whether in all caps or otherwise—when he first subscribed to the Website. Reich Decl. ¶ 26. Plaintiff Guptill does not recall seeing the TOS at all. *Id.*

For the foregoing reasons, Defendant's cited authorities are inapposite,[6] and its reliance on *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) ("*Maldini*"), is unavailing, as *Maldini* is a red herring. In *Maldini*, plaintiffs moved to certify various classes, including for breach of contract claims based on a contract identified by plaintiffs after discovery. *Id.* at 127-28. Thus, *Maldini* does not reach to Plaintiffs' dispute over which version of the TOS they were presented with, which parties the agreement contemplated, whether that version contained a class action waiver, and—if such a provision did exist—whether Plaintiffs had inquiry notice of it. Here, the issue of consent is a threshold factual question that must be resolved before any enforceability analysis can proceed.

## **CONCLUSION**

Defendant's Motion should be denied. However, should the Court grant the Motion, Plaintiffs respectfully reserve the right to amend their Complaint to address specific allegations regarding the TOS agreements they may—or may not—have encountered.

Dated: July 21, 2025

By: */s/ David M. Wilkerson*

David M. Wilkerson

---

[6] *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234, 133 S. Ct. 2301, 186 L. Ed. 2d 417 (2013), *Greene v. OneMain Fin. Grp., LLC*, No. 1:17-CV-848, 2018 U.S. Dist. LEXIS 190201, 2018 WL 5831681, at *4 (M.D.N.C. Nov. 7, 2018), *Moreno v. Expedia*, No. 3:18CV-105, 2018 U.S. Dist. LEXIS 104161, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018), and *Corpening v. Moneylion Inc.*, 2020 U.S. Dist. LEXIS 272482, at *13-15 (W.D.N.C. 2020) did not involve a situation where the defendants sought to enforce a specific provision in a terms of service agreement that differed from the version the plaintiffs encountered, nor did it involve a situation where a party not named as the contracting party attempted to enforce a provision of the agreement.

David M. Wilkerson
NC State Bar No. 35742
**Wilkerson Justus PLLC**
P.O. Box 54
Asheville, NC 28802
(828) 316-6902
dwilkerson@wilkersonjustus.com

Mark S. Reich (*pro hac vice*)
Gary S. Ishimoto*
Christopher DeVivo*
Alyssa Tolentino*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, Floor 27
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: gishimoto@zlk.com
Email: cdevivo@zlk.com
Email: atolentino@zlk.com

*Counsel for Plaintiffs*

**pro hac vice* forthcoming