**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:25-cv-00096-CCE-JLW**

| | |
|---|---|
| MICHAEL WAMBOLD and ROBERT GUPTILL, On Behalf of Themselves and All Others Similarly Situated,<br><br>*Plaintiffs*,<br>v.<br><br>RTA MEDIA HOLDINGS, LLC D/B/A RACING AMERICA,<br><br>*Defendant*. | **DEFENDANT, RTA MEDIA HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ACTION ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f) AND/OR 23(c)(1)(A)**<br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO L.R. 7.3(c)(1)** |

Defendant, RTA Media Holdings, LLC d/b/a Racing America ("RTA Media") hereby submits this reply brief in support of its motion to dismiss the class action allegations asserted in Plaintiffs Michael Wambold ("Wambold") and Robert Guptill's ("Guptill" and collectively referred to herein with Wambold as the "Plaintiffs") Class Action Complaint (the "Complaint," ECF No.1) pursuant to Rules 12(b)(6) ("Rule 12(b)(6)"), 12(f) ("Rule 12(f)") and/or 23(c)(1)(A) ("Rule 23(c)(1)(A)") of the Federal Rules of Civil Procedure (the "Motion").

RTA Media's reply brief and Motion are made and based on the allegations asserted in the Complaint, the Declaration of Colin Smith submitted in support of the Motion (the "Smith Decl."), the Supplemental Declaration of Colin Smith submitted in support of the Motion (the "Supp. Smith Decl.") filed with this reply brief, the Declaration of Spencer H. Hoisington, Esq. (the "Hoisington Decl."), pleadings on file in this matter, and any argument of counsel entertained by the Court.

## I. <u>INTRODUCTION</u>

As set forth in the company's opening brief in support of its Motion, Plaintiffs have commenced this action seeking class action certification based on RTA Media's alleged unauthorized dissemination of certain personally identifiable information ("PII") without their consent in connection with their agreement to subscribe to the company's video content platform located at www.racingamerica.tv (the "Website"). (*See, e.g.,* ECF No. 1 at 1). RTA Media's opening brief in support of its Motion argues that Plaintiffs cannot viably assert or maintain their class action allegations in this action because they have expressly waived such rights when agreeing to RTA Media's Viewer Terms of Service Agreement (the "Terms of Service Agreement" or "Terms of Service") upon subscribing to the company's website. (Smith Decl. ¶¶ 9, 11-13.) Thus, the Court's adjudication of RTA Media's Motion is straightforward. First, the United States Court of Appeals for the Fourth Circuit has recently affirmed the enforceability of class action wavier provisions such as that relied upon in RTA Media's Motion. *See Maldini v. Marriott Int'l, Inc.,* 2025 U.S. App. LEXIS 13492, at *14 (4th Cir. June 5, 2025) ("*Marriott II*").

In Plaintiffs' Opposition to the Motion, they have attempted to muddle the clarity of RTA Media's arguments in essentially three ways. First, Plaintiffs argue that the Court should summarily deny RTA Media's Motion for failing to follow the Court's pre-filing meet and confer requirement. (ECF No. 20 at 8-9.) Second, Plaintiffs assert that the Court cannot properly consider the Terms of Service because they are outside the four corners of the Complaint. (*Id.* at 10-11.) Finally, Plaintiffs argue that there are disputed factual issues

concerning the version of the Terms of Service applicable to their subscriptions to the Website. (ECF No. 20 at 12-15.) As set forth below, each of Plaintiffs' arguments fail and RTA Media's Motion should be granted.

## II. ARGUMENT

### A. RTA Media Complied with the Court's Meet and Confer Requirement.

Plaintiffs' first argument is that RTA Media's Motion should be denied because its counsel failed to meet and confer prior to filing in violation of the Court's directive to do so. (ECF No. 20 at 8-9.) RTA Media's counsel maintains that it complied, directly or substantially, with its obligation to meet and confer in connection with filing the Motion.

The Court's orders stated Defendant needed to "initiate" a meet-and-confer before filing the Motion, but the orders were silent on whether the parties needed to meet-and-confer before filing the Motion. *See* Text Order, ECF No. [May 5, 2025] and [June 3, 2025]. The spirit of the Court's orders contemplates any meet-and-confer will involve a meaningful discussion of the basis of a motion to dismiss and whether disputed issues could be resolved or narrowed by an amended complaint. *See* Hoisington Decl. ¶ 4. Defendant's counsel believed this could only occur after Defendant completed its investigation into Plaintiffs' allegations and Defendant's potential defenses thereto. Hoisington Decl. ¶¶ 4-5. While Defendant's counsel conducted a diligent investigation, it concluded around the time of the final deadline for its responsive pleading, June 30, 2025. *See* Text Order, ECF No. [June 24, 2025]; Hoisington Decl. ¶ 6.

Even though Defendant's counsel sent that email a few hours before filing the Motion, considering the language and spirit of the Court's orders, Defendant's counsel believed they were complying directly, or at the very least substantially, with their obligation to initiate a meet and confer in connection with filing the Motion when they emailed Plaintiffs' counsel on June 30, 2025. Hoisington Decl. ¶¶ 3-5, 7. Defendant's counsel also believed the parties could determine "whether [the] disputed issues [could] be resolved or narrowed by an amended complaint" in the twenty-one (21) days before the filing deadline for Plaintiffs' response to the Motion. Hoisington Decl. ¶8.

Despite Plaintiffs' claim that Defendant deprived them "of an opportunity to narrow or eliminate disputes", the parties met on July 15, 2025, to discuss the basis of the Motion. Hoisington Decl. ¶¶ 8-10. Rather than amending their Complaint after that meeting, Plaintiffs filed an Answering Brief in Opposition to the Motion, undercutting their allegation that Defendant's counsel is solely responsible for "forc[ing] [them] to litigate issues that could–and should–have been resolved earlier through proper cooperation."

**B. The Court Can Consider Materials Outside the Pleadings.**

Next, Plaintiffs assert that the Court cannot consider materials outside the pleadings in ruling on RTA Media's Motion because it is a motion to dismiss pursuant to Rule 12(b)(6). (ECF No. 20 at 8-9.) Plaintiffs are wrong. The Court can properly consider materials outside the pleadings in adjudicating RTA Media's Motion.

As noted in RTA Media's opening brief, the Court can properly consider materials outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. (ECF No. 17-1 at

10-13.) Specifically, documents other than the pleadings are properly considered if they are either attached to the Complaint as authorized by Rule 10(c) or attached to the motion to dismiss, so long as they are integral to the Complaint and authentic. *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999).

Plaintiffs apparently do not contest that RTA Media's Terms of Service submitted for the Court's consideration is integral to the allegations of the Complaint. To the extent they do contest this issue, as argued in RTA Media's opening brief (ECF No. 17-1 at 11-12) the Terms of Service are clearly integral to the allegations in Plaintiffs' Complaint. Specifically, both Wambold and Guptill are alleged to be subscribers to the Website, and the company has confirmed, based on Plaintiffs having provided the email addresses submitted when subscribing, that they are current Website subscribers. (ECF No. 1 ¶¶ 27-28; Smith Decl. ¶¶ 7-9, 11-12; ECF No. 17-2 at 2-4.) Plaintiffs have further alleged that RTA Media does not disclose, inform, seek consent to the disclosure of their PII or sensitive information from subscribers during the subscription process. (ECF No. 1 ¶¶ 9-11, 179-184.) As discussed repeatedly, subscribers or pay-per-view purchases cannot process payment on the Website without expressly agreeing to RTA Media's Terms of Service Agreement. (Smith Decl. ¶¶ 11-13; ECF 17-2.) Accordingly, RTA Media's Terms of Service are clearly integral to the allegations of Plaintiffs' Complaint.

Despite Plaintiffs' attempts to cloud the authenticity of the Terms of Service presented for the Court's consideration, there also can be no genuine dispute that they are

a true and correct copy of the version in place on RTA Media's Website as of April 2025. (Smith Decl. ¶¶ 3, 7, Ex. A; ECF No. 17-2 at 1-2, 8-16; Smith Supp. Decl. ¶¶ 4-5.) Moreover, this version of the Terms of Service has been attested to under oath as being applicable to Wambold's subscription to the Website, which he purchased on April 22, 2025. (Smith Supp. Decl. ¶ 4, Ex. B.) It was also applicable to Wambold's subsequent renewal of his Website subscription on May 22, 2025. (*Id.*) Moreover, this version of RTA Media's Terms of Service also applies to Guptill's yearly subscription to the Website purchased on September 13, 2024, which expires on September 13, 2025. (Smith Supp. Decl. ¶ 6.) As noted in RTA Media's opening brief, Section 1 of RTA Media's Terms of Service expressly states that users and subscribers agree to any revised version of the agreements by continuing to use the Website. (Smith Decl., Ex. A § 1 at 1; ECF No. 17-2 at 8.) Accordingly, the Court is authorized to consider RTA Media's Terms of Service in adjudicating the company's Motion.

The Court also has discretion to consider RTA Media's Terms of Service under Rule 23. Granted, RTA Media's Motion seeks dismissal of Plaintiffs' class action allegations at the outset of this case, such relief is appropriate under Rule 23 when a plaintiff "could establish no facts to make out a class." *See Williams v. Potomac Family Dining Grp. Operating Co., LLC.,* No. GHJ-19-1780, 2019 U.S. Dist. LEXIS 181604, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019). Moreover, in conjunction with a Rule 23 motion, a "court may consider all material evidence submitted by the parties" in making its determination. *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975); *accord*

*Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 305, 320 (2d Cir. 1995). Accordingly, the Court also has discretion to consider RTA Media's Terms of Service under Rule 23 and the company's Motion expressly seeks dismissal of Plaintiffs' class action allegations under Rule 23(c)(1)(A).

### C. The Terms of Service Provided to the Court Apply to Plaintiffs.

Plaintiffs' final arguments against dismissal of their class action allegations are two-fold: (1) that there are genuine, disputed facts concerning the version of the Terms of Service applicable to their Website subscriptions; and (2) that similar issues exist concerning their consent to any such Terms of Service. (ECF No. 20 at 12-15.) Both arguments fail upon examination.

First, Plaintiffs attempt to murky the Court's analysis of the Terms of Service's class action waiver provisions by referring to a 2022 Terms of Service that states it's between Vimeo and subscribers to the Website. (ECF No. 20 at 12-14.) While Plaintiffs' Complaint readily admits that the Website employs "Vimeo's 'over the top' ("OTT") platform" for displaying video content (ECF No. 1 ¶¶ 6-7; ECF No. 20 at 7), reliance on the 2022 Terms of Service is a red herring deployed to distract the Court from an uncomplicated analysis.

RTA Media has submitted the Terms of Service effective on the Website as of April 2025. (Smith Decl. ¶¶ 3, 7, Ex. A; ECF No. 17-2 at 1-2, 8-16; Smith Supp. Decl. ¶¶ 4-5.) RTA Media has additionally submitted the billing history for Wambold, which unquestionably demonstrates that he purchased a monthly subscription to the Website on April 22, 2025. (Smith Supp. Decl. ¶ 4, Ex. B.) Wambold subsequently renewed his

monthly subscription on May 22, 2025, which was clearly after the Terms of Service were effective. (*Id.*) Moreover, as noted in RTA Media's opening brief, Section 1 of RTA Media's Terms of Service expressly states that users and subscribers agree to any revised version of the agreements by continuing to use the Website. (Smith Decl., Ex. A § 1 at 1; ECF No. 17-2 at 8.) As such, the submitted version of RTA Media's Terms of Service also applies to Guptill's yearly subscription to the Website purchased on September 13, 2024, which expires on September 13, 2025. (Smith Supp. Decl. ¶ 6.) Accordingly, the Court should not be distracted by Plaintiffs' reference to the 2022 version of the Terms of Service in adjudicated RTA Media Motion.[1]

The Court should also not be distracted by Plaintiffs' assertions that there are factual disputes concerning their consent to RTA Media's Terms of Service, which were effective April 2025. As exhaustively detailed in RTA Media's opening brief, a subscriber to the Website cannot complete a purchase – a monthly subscription, a yearly subscription, or a pay-per-view purchase – without checking a dialog box that confirms by proceeding with their purchase they expressly agree to the company's Terms of Service. (ECF No. 17-2 at 3-4; Smith Decl. ¶¶ 11-12.) "Under North Carolina law, online consumer agreements

[1] To the extent the Court finds the 2022 Terms of Service material to its analysis, RTA Media is alleged to have employed Vimeo's OTT platform on the Website to facilitate the display of content. (ECF No. 1 ¶¶ 6-7.) The 2022 Terms of Service, which appeared on the Website, also contains a class action waiver provision. (*See* Reich Decl. ¶ 18, Ex. 1 § 11.) The 2022 Terms of Service additionally contain a provision that subscriber's consent to all subsequent versions and modifications posted by continuing to subscribe to the website. (*Id.* § 1.) Moreover, RTA Media is either a direct or third-party beneficiary of the 2022 Terms of Service between Vimeo and its Website subscribers. *See, e.g., Jarman v. Twiddy & Co. of Duck, Inc.,* 289 N.C. App. 319, 326-28, 889 S.E.2d 488, 495-96 (2023).

are valid and enforceable when a user affirmatively acknowledges and agrees to contractual terms by checking a box or clicking a button as a condition of proceeding with his transaction." *Moreno v. Expedia,* No. 3:18-CV-105, 2018 U.S. Dist. LEXIS 104161, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018); *accord Corpening v. Moneylion Inc.,* 2020 U.S. Dist. LEXIS 272482, at *13-15 (W.D.N.C. 2020) (upholding arbitration agreement language in terms of use that required plaintiff to affirmatively click a button to consent to the terms and that contained arbitration language in all capital letters and bold font advising that they must read the arbitration provision because it sets out when and how claims will be arbitrated and not litigated in court). Thus, Wambold expressly consented to RTA Media's Terms of Service, which were effective April 2025, when he purchased a monthly subscription to the Website on April 22, 2025. (Smith Supp. Decl. ¶ 4, Ex. B.) Wambold again expressly consented to RTA Media's Terms of Service when he renewed his monthly subscription on May 22, 2025. (*Id.*)

Likewise, Guptill purchased a year subscription to the Website on September 13, 2024, which expires on September 13, 2025. (Smith Supp. Decl. ¶ 6.) In making his purchase, Guptill also had to click a dialog box indicating his consent to RTA Media's Terms of Service. (ECF No. 17-2 at 3-4; Smith Decl. ¶¶ 11-12.) As noted in RTA Media's opening brief, Section 1 of RTA Media's Terms of Service expressly states that users and subscribers agree to any revised version of the agreements by continuing to use the

Website.[2] (Smith Decl., Ex. A § 1 at 1; ECF No. 17-2 at 8.) Plaintiffs' opposition does not challenge the existence or the viability of this provision. As, Guptill, like Wambold, is bound by the Terms of Service submitted by RTA Media in support of its Motion. Accordingly, Plaintiffs' class action allegations should be dismissed by the Court as requested in RTA Media's Motion.

## III. CONCLUSION

For the reasons set forth in RTA Media's opening brief and in this reply brief, RTA Media respectfully requests the Court dismiss Plaintiffs' class action allegations pursuant to Rule 12(b)(6), Rule 12(f) and/or Rule 23(c)(1)(A), together with any and all other relief that it deems just and appropriate.

This 4th day of August 2025.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

/s/ Spencer H. Hoisington
Spencer H. Hoisington
N.C. State Bar No. 43481
Chanda L. McClain
N.C. State Bar No. 56537
227 W. Trade St., Ste. 300
Charlotte, North Carolina 28202
Telephone: (704) 302-1289
Spencer.Hoisington@wilsonelser.com
chanda.mcclain@wilsonelser.com
*Attorney for Defendant*

---

[2] Should reference to the 2022 Terms of Service is deemed necessary to reach this conclusion, these terms also state that subscriber's consent to all subsequent posted versions and modifications by continuing to subscribe to the website. (*See* Reich Decl. ¶ 18, Ex. 1 § 1.) As noted earlier, RTA Media is either a direct or third-party beneficiary to these of Terms of Service between Vimeo and its Website subscribers. *See, e.g., Jarman, Inc.,* 289 N.C. App. at 326-28, 889 S.E.2d at 495-96.

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing was electronically filed using the Court's electronic filing system which will electronically serve the following counsel of record:

David M. Wilkerson
Wilkerson Justus PLLC
PO Box 54
Asheville, NC 28802
dwilkerson@wilkersonjustus.com

Mark S. Reich
Levi & Korsinsky, LLP
33 Whitehall Street, Floor 17
New York, NY 10004
mreich@zlk.com

In addition, I served the following counsel, who have not yet appeared in this action, via electronic mail on the same day:

Gary S. Ishimoto
Alyssa Tolentino
Levi & Korsinsky, LLP
33 Whitehall Street, Floor 17
New York, NY 10004
gishimoto@zlk.com
atolentino@zlk.com

This the 4th day of August 2025.

/s/ Spencer H. Hoisington
Spencer H. Hoisington