UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:25-CV-00096-CCD-JGM

| | |
|---|---|
| MICHAEL WAMBOLD and ROBERT GUPTILL, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTA MEDIA HOLDINGS, LLC d/b/a RACING AMERICA,<br><br>Defendant. | **PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT RTA MEDIA HOLDINGS, LLC'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f), AND/OR 23(c)(1)(A)** |

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

A. Defendant's Supporting Declarations and Exhibits ..... 2

B. Plaintiffs' Alleged Subscriptions ..... 4

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

A. Defendant Has Not Met Its Burden to Establish That Plaintiffs Manifested Assent to the Class Action Waiver ..... 5

B. Defendant's Class Action Waiver Provision and Arbitration Clause is Unenforceable ..... 7

C. Plaintiffs Did Not Consent to Defendant's Data Sharing Practices ..... 10

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Cases**


*Al-Safin v. Circuit City Stores, Inc.*,
394 F.3d 1254 (9th Cir. 2005) .... 9

*Anderson v. Ford Motor Co.*,
No. 3:22-CV-758-HEH, 2024 WL 815505 (E.D. Va. Feb. 27, 2024) .... 7

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 10

*Cappello v. Walmart Inc.*,
No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .... 12

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .... 6

*Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*,
230 N.C. App. 1 (2013) .... 5

*Chorley Enters., Inc.* v. *Dickey's Barbecue Rests., Inc.*,
807 F.3d 553 (4th Cir. 2015) .... 7

*Corpening v. Moneylion Inc.,*
2020 U.S. Dist. LEXIS 272482 (W.D.N.C. 2020) .... 8

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2nd Cir. 2023) .... 6

*Greenwood, Inc. v. IES Commercial, Inc.*,
609 F. Supp. 3d 401 (D.S.C. 2022) .... 5

*In re Hulu Privacy Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) .... 11

*Maree v. Deutsche Lufthansa AG*,
No. SACV 20-885-MWF (MRWX), 2020 WL 6018806 (C.D. Cal. Oct. 7, 2020) .... 6

*Marshall v. Georgetown Memorial Hospital*,
112 F.4th 211 (4th Cir. 2024) .... 5, 6

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .... 10

*Moreno v. Expedia,*
No. 3:18CV-105, 2018 U.S. Dist. LEXIS 104161, 2018 WL 3059617 (W.D.N.C. June 20, 2018) ........ 8

*Murray v. Deerfield Mobile Home Park, LLC*,
277 N.C. App. 480 (N.C. App. 2021) ........ 4

*Orthodontic Centers of America, Inc. v. Hanachi*,
151 N.C.App. 133, 564 S.E.2d 573 (2002) ........ 4

Rogers v. Tug Hill Operating, LLC,
76 F.4th 279 (4th Cir. 2023), cert. denied, 144 S. Ct. 818 (2024) ........ 7

*Sarchi v. Uber Techs., Inc.*,
268 A.3d 258 (N.J. 2022) ........ 6

*Smith v. Facebook, Inc.*,
745 F. Appx. 8 (9th Cir. 2018) ........ 10

*StubHub, Inc. v. Ball*,
676 S.W.3d 193 (Tex. App. 2023) ........ 6

**Statutes**

18 U.S.C. § 2710(b)(2)(B)(i) ........ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1
Fed. R. Civ. P. 12(f) ........ 1
Fed. R. Civ. P. 23(c)(1)(A) ........ 1

Plaintiffs Michael Wambold and Robert Guptill (the "Plaintiffs") file this answering brief in opposition to Defendant RTA Media Holdings, LLC d/b/a Racing America's ("Defendant's" or "RTA Media's") Motion to Dismiss Class Action Allegations Pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and/or 23(c)(1)(A) (the "Motion").

## INTRODUCTION

Defendant's Motion relies on generalized statements and fails to meet its evidentiary burden to preclude this matter from proceeding as a class action at this stage of the proceedings. Although Defendant repeatedly contends that users were required to agree to its Terms of Service ("TOS") before completing a purchase or accessing content, it submits no screenshots, no archived versions of the purchase or subscription interface, and no substantial evidence demonstrating how the TOS were presented to Plaintiffs. Instead, Defendant relies on generalized descriptions of what supposedly "must" have occurred. Such generalized descriptions do not establish contractual assent.

Even assuming *arguendo* that Plaintiffs received conspicuous notice of some version of Defendant's TOS when they first subscribed to Defendant's website, Defendant still cannot establish that Plaintiffs agreed to arbitrate or to waive their right to pursue class claims against Defendant. Indeed, the version of the TOS presented to Plaintiffs expressly identifies Vimeo, an independent third party, as the contracting entity (the "Vimeo TOS"), not RTA Media. Defendant offers no evidence that any different version governed Plaintiffs' subscriptions during the relevant period preceding the filing of the Complaint. Therefore, if Plaintiffs assented to some version of Defendant's TOS, that assent would have been to terms identifying Vimeo (not Defendant) as the contracting party.

Subsequently, Defendant must rely on a later iteration of the TOS naming itself as the contracting party (the "RTA Media TOS"). But Defendant's own records show that the subscription transactions associated with the RTA Media TOS occurred only after Plaintiffs initiated this action. Plaintiffs cannot be retroactively bound to arbitration provisions or class waivers adopted after their claims accrued.

Finally, notwithstanding the Court's Order limiting Defendant's Motion to the class action waiver issue (*see* ECF No. 25), Defendant's Motion and supporting declarations make passing reference to the assertion that Plaintiffs purportedly consented to Defendant's data-sharing practices by agreeing to its cookie and privacy policies (the "Disclosures"). Those arguments exceed the scope of the Court's directive. In any event, they are unsupported by the record.

Indeed, Defendant does not identify the specific versions of the alleged Disclosures on which it relies, nor does it provide the text of any cookie banner, privacy policy, or cookie policy in effect at the time Plaintiffs allegedly subscribed or at the time the complaint ("Complaint") (ECF No. 1) was filed. Absent evidence of what Disclosures were presented to Plaintiffs, Defendant cannot establish knowing and informed consent.

Accordingly, Defendant has not, and cannot at this juncture, demonstrate that Plaintiffs are bound by any class action waiver or that they provided sufficient consent to Defendant's challenged practices. Furthermore, Defendant has not carried its burden to establish the existence of any enforceable class action waiver applicable to Plaintiffs. The Motion should be denied.

## STATEMENT OF FACTS

### A. Defendant's Supporting Declarations and Exhibits

In support of its Motion, Defendant submits: (1) the Declaration of Colin Smith ("Smith Decl."); and (2) a Supplemental Declaration of Colin Smith ("Supp. Smith Decl.").

Attached to the Smith Declaration is "Exhibit A," which Defendant identifies as its TOS, reading "Last Updated: April 2025" ("Exhibit A" or the RTA Media TOS).

Attached to the Supp. Smith Decl. are: (1) "Exhibit A," consisting of a screenshot purporting to depict Plaintiff Wambold's subscription transactions; (2) "Exhibit B," which Defendant identifies as an earlier version of its TOS, reading "Last updated: Sep 1, 2022" ("Exhibit B" or the Vimeo TOS); and (3) "Exhibit C," an email communication from Vimeo to Defendant titled "Action Needed: Update Your Custom Terms Before April 15" ("Exhibit C" or "Vimeo Email").

Defendant relies on two different versions of its purported TOS in its Motion: (1) Exhibit A (RTA Media TOS); and Exhibit B (Vimeo TOS). Both versions contain class action waiver provisions. *See* Smith Decl., Ex. A; *see also* Supp. Smith Decl., Ex. B. However, the two documents identify materially different contracting parties.

Exhibit A states: "This Terms of Service Agreement ('Agreement') is between you and RTA Media Holdings, LLC." *See* Smith Decl. Ex. A. By contrast, Exhibit B states: "This ***Vimeo*** Terms of Service Agreement (the 'Agreement' or 'Terms of Service') is made between ***Vimeo.com, Inc***. ('Vimeo,' 'we,' 'us,' or 'our') and you, our customer." (emphasis added). *See* Supp. Smith Decl. Ex. B.

Vimeo, Inc. is a third-party video technology company that provides website operators with infrastructure and tools to host and stream video content online. Compl. ¶¶ 6–7. Defendant elected to use Vimeo's "over-the-top" ("OTT") platform to host and deliver the video content available through its website ("Website"). *Id.*

Defendant acknowledges that the Website initially used Vimeo's default policy templates until April 2025. Motion at 17–18. According to Defendant, prior versions of the templates

identified "Vimeo.com, Inc." as the contracting entity rather than Defendant, and Defendant did not revise those terms until Vimeo implemented updated default templates in April 2025. *Id.*

Per Exhibit C, Vimeo informed RTA Media that "[Vimeo is] reaching out to remind [RTA Media] about the importance of publishing [RTA Media's] own Terms of Service, Privacy Policy, and Cookie Policy for [RTA Media's] OTT site". *See* Ex. C.

### B. Plaintiffs' Alleged Subscriptions

The Complaint alleges that Plaintiffs originally subscribed to Defendant's Website in or around 2023. Compl. ¶¶ 27–28.

According to the Smith Decl., Plaintiff Wambold first subscribed to the Website in April 2025, and Plaintiff Guptill first subscribed in September 2023. Smith Decl. ¶ 7. This is at odds with the allegations in the Complaint. Compl. ¶¶ 27.

Defendant also submits billing records reflecting that Plaintiff Wambold purchased a monthly subscription on April 22, 2025, and renewed it in May 2025. Supp. Smith Decl. ¶ 4, Ex. A.

However, Plaintiffs filed their Complaint on February 7, 2025, prior to the April 22, 2025 transaction Defendant attributes to Plaintiff Wambold. *See* ECF No. 1.

The Court permitted discovery as to the class action waiver, yet Defendant did not pursue any discovery on this issue from Plaintiffs. *See* ECF No. 25, at 3.

## <u>LEGAL STANDARD</u>

A party seeking to enforce a contract bears the burden of proving the essential elements of a valid contract. *Murray v. Deerfield Mobile Home Park, LLC*, 277 N.C. App. 480, 487 (N.C. App. 2021); *see also Orthodontic Centers of America, Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002) (same). Under North Carolina law, a valid contract requires mutual assent

to the terms of the agreement. *Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 7 (2013). In determining whether the parties have agreed to arbitrate a particular dispute or, in this case, whether they have agreed to a class action waiver, federal courts apply state law principles of contract formation. *Greenwood, Inc. v. IES Commercial, Inc.*, 609 F. Supp. 3d 401, 406 (D.S.C. 2022).

## **ARGUMENT**

Defendant's motion fails for several independent reasons. *First*, Defendant has not produced evidence demonstrating that Plaintiffs manifested assent to any class waiver. *Second*, the only TOS shown to have been presented to users identified Vimeo (not Defendant) as the contracting party. *Third*, Defendant cannot retroactively impose a class waiver through terms allegedly accepted only after this litigation commenced.

### A. Defendant Has Not Met Its Burden to Establish That Plaintiffs Manifested Assent to the Class Action Waiver

Defendant's Motion offers no substantive evidentiary support for its assertion that Plaintiffs assented to the TOS merely because, according to the Smith Decl., users purportedly "must also check a dialog box that confirms by proceeding with their payment they agree to RTA Media's Terms of Service Agreement applicable to the website" (Smith Decl. ¶ 11), and that "all … pay-per-view purchasers and all subscribers to the Website must affirmatively click the dialog box confirming they agree to the terms of RTA Media's Terms of Service Agreement to view any desired content." (Smith Decl. ¶ 12). Accordingly, any analysis pertaining to whether Plaintiffs unambiguously manifested their assent to any TOS is purely speculative.

A user's click constitutes assent only "if the user is explicitly advised that the act of clicking will constitute assent" to the agreement. *Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 222 (4th Cir. 2024) (quoting *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857

(9th Cir. 2022)). The mere existence of a checkbox is not dispositive. *Marshall,* 112 F.4th at 222. Indeed, courts have repeatedly refused to enforce online agreements where the design, content, and presentation of the interface failed to provide an unambiguous manifestation of assent. *See id.* at 223 (no assent where the button did not explain that clicking "submit" constituted agreement to terms); *Berman*, 30 F.4th at 858 (no assent where the button text gave no indication it would bind plaintiffs to terms); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025) (no assent where the "[r]edeem now" button did not indicate what action would constitute assent). *Sarchi v. Uber Techs., Inc.*, 268 A.3d 258, 272 (N.J. 2022) (no assent where the "DONE" button did not indicate that clicking it constituted agreement to terms); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 708 (2nd Cir. 2023) (holding that only clicking the "Confirm and Continue" button would constitute assent to the terms. Clicking any other button, such as to change the debit card or to exit the purchase, would not constitute assent).

Here, Defendant provides no screenshots, archived webpages, or other evidence showing how the alleged TOS were presented to users. Without such evidence, Defendant cannot establish as a matter of law that its purported clickwrap agreements are binding. *See StubHub, Inc. v. Ball*, 676 S.W.3d 193, 203 (Tex. App. 2023) ("By failing to provide any evidence of the design and content of the relevant user interface, StubHub has not conclusively established that it provided [plaintiff] with sufficient notice of the [u]ser [a]greement containing the arbitration provision."); *see also Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWX), 2020 WL 6018806, at *3 (C.D. Cal. Oct. 7, 2020) ("it would be improper to rule on the existence of an arbitration agreement without first determining, as a factual matter, what the website looked like on the relevant date."). A declaration reciting how the process purportedly works, without

contemporaneous screenshots or system records, is insufficient to carry Defendant's burden at this stage.

**B. Defendant's Class Action Waiver Provision and Arbitration Clause is Unenforceable**

Even if Plaintiffs "clicked" or "checked" a box during the subscription or purchase process, they are not bound by the class action waiver Defendant now seeks to enforce. If Plaintiffs assented to any TOS at all, that assent was to the ***Vimeo TOS***, thereby forming a contract, if any, with Vimeo, not RTA Media. *See* Ex. B ("This ***Vimeo*** Terms of Service Agreement (the 'Agreement' or 'Terms of Service') is made between ***Vimeo.com, Inc.*** … and you, our customer.") (emphasis added); *see also Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023), cert. denied, 144 S. Ct. 818 (2024) (reversing order compelling arbitration where the defendant was not a party to the arbitration agreement contained in the terms of service).

Defendant's own account confirms as much. Even accepting its version of events as true, Plaintiff Guptill first subscribed in September 2023 (Smith Decl. ¶ 7), at which time the operative TOS identified Vimeo, not Defendant, as the contracting entity. Defendant offers no evidence that any different version governed that transaction. Accordingly, Defendant cannot establish that Plaintiffs agreed to arbitrate with, or waive class claims against, Defendant.

At a minimum, a genuine dispute of material fact exists as to whether a reasonable user who encountered the Vimeo TOS, expressly identifying a separate corporate entity, would understand that he or she was agreeing to provisions benefiting or enforceable by an entirely different, unnamed entity. *See Anderson v. Ford Motor Co.*, No. 3:22-CV-758-HEH, 2024 WL 815505, at *3 (E.D. Va. Feb. 27, 2024) (quoting *Chorley Enters., Inc.* v. *Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)) ("If there is a genuine issue of material fact 'regarding the existence of an agreement to arbitrate,' the court must hold a jury trial on this issue.").

Defendant's reliance on *Moreno v. Expedia,* No. 3:18CV-105, 2018 U.S. Dist. LEXIS 104161, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018) and *Corpening v. Moneylion Inc.,* 2020 U.S. Dist. LEXIS 272482, at *13-15 (W.D.N.C. 2020) is likewise unavailing. Neither decision involved circumstances where the purported TOS identified a completely different, independent third party as the contracting party. In both cases, the courts addressed the enforceability of website terms presented by, and governing the relationship between, the defendant operating the website and the user. Here, by contrast, the TOS relied upon by Defendant purport to bind users to an agreement with an entirely separate entity, Vimeo, creating a material disconnect between the party allegedly presenting the terms and the party identified as the contractual counterparty. Those authorities therefore do not address, much less resolve, the threshold issue presented here: whether a user can be deemed to have assented to terms that identify a different entity altogether as the contracting party.

Moreover, Defendant's Motion presents a screenshot of the TOS (Exhibit B) that is misleading and distorts the record before this Court. Exhibit B contains a prominently highlighted heading reading: "RACING AMERICA (VIMEO) TERMS OF SERVICE AS OF 3/31/25." However, a version of the TOS obtained by Plaintiffs' counsel from the Internet Archive's Wayback Machine, also dated March 31, 2025 ("Exhibit 1"), does not contain such an additional heading or any reference to "Racing America." *See* Christopher DeVivo Declaration, Exhibit 1. The absence of that language in the archived version strongly indicates that the additional heading was superimposed by Defendant and was not part of the terms presented to users.

While Plaintiffs will not speculate as to Defendant's reason for adding this additional header, it is nonetheless inaccurate. By placing "Racing America" next to "Vimeo," the heading creates the false impression that users were aware they were contracting with RTA Media. The

record, however, indicates that Plaintiffs were presented with TOS that referenced only Vimeo as the contracting entity.

Furthermore, Defendant's assertion that "[b]oth Wambold and Guptill clearly consented to the April 2025 Terms of Service, and the class action waiver provision contained therein" (*see* Motion at 18), based on alleged subsequent transactions occurring after the Complaint was filed, is without merit. Plaintiffs cannot retroactively impose a class waiver through terms allegedly accepted only after this action commenced. *See* ECF No. 1 (Plaintiffs' Complaint bearing a file date of February 7, 2025); *see also Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1260 n. 5 (9th Cir. 2005) ("Circuit City has not cited any case, and our research has revealed none, where a party was permitted unilaterally to amend a contract midway through litigation concerning that contract."). Indeed, Defendant's theory would produce an untenable result: a company could retroactively impose arbitration provisions, class action waivers, or other material limitations on rights simply by adopting new terms after litigation has begun and then pointing to later user activity. Courts routinely reject such attempts to alter the parties' rights through unilateral amendments adopted after a dispute is already pending.

Lastly, Defendant's argument that "it is clear that Vimeo intended the content of the default templates, including the TOS, to benefit RTA Media and visitors to the Website" (*see* Motion at 19), and that Plaintiffs' assent to Vimeo's TOS therefore constitutes de facto consent to RTA Media's TOS, is likewise unavailing. Defendant cites no authority for the proposition that assent to one entity's terms automatically binds a user to a separate, non-signatory entity's arbitration clause or class action waiver. Absent evidence that Defendant was a party to, or an intended and enforceable third-party beneficiary of, the governing agreement, its attempt to enforce the class waiver fails. In fact, Exhibit C to the Supp. Smith. Decl. illustrates the importance Vimeo placed

on ensuring Defendant correctly represented its TOS. *See* Supp. Smith. Decl., Ex. C ("We're reaching out to remind you about the importance of publishing ***your own*** Terms of Service, Privacy Policy, and Cookie Policy for your OTT site.") (emphasis added).

### C. Plaintiffs Did Not Consent to Defendant's Data Sharing Practices

Although Defendant devotes no substantive analysis to consent as it relates to Plaintiffs' claims, it gestures toward such an argument by referencing its subscription process. Smith Decl. ¶¶ 4–6, 12–13; Motion at 7–8. These passing assertions are insufficient to carry Defendant's burden as to the issue of consent as it relates to Plaintiffs' claims. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (holding that it is Defendant's burden to prove consent as the party seeking the "benefit of [any such] exception"); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, at 1063 (N.D. Cal. 2021) ("[i]n order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue"). Moreover, courts evaluate consent under an objective standard. *See Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ("[i]n determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.").

Here, Defendant has neither met its burden nor can it point to what disclosure language constitutes valid consent. *First*, (and again) Defendant fails to identify which versions of its Disclosures were purportedly presented to Plaintiffs, nor does it provide the operative language from any alleged cookie banner or point-of-collection notice. Indeed, the only privacy policy before this Court for analysis appears to be the RTA Media's most current version, via the hyperlink found in Exhibit A of the Smith Decl. and Exhibit B of the Supp. Smith Decl., without any showing that this current version was in effect at the time of Plaintiffs' subscriptions or that

Plaintiffs were ever presented with it. Such omissions are fatal to any consent argument at the pleading stage.

*Second*, Defendant offers no comprehensive analysis, let alone supporting authority, demonstrating that even the current version of its privacy policy would place a reasonable person on notice of the specific data-sharing practices alleged here. Generalized references to cookies or data collection, untethered to any clear disclosure that users' video-viewing information would be transmitted to specifically identified third parties, cannot establish knowing consent to disclose statutorily protected information under the VPPA or the Wiretap Act. *See In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *18 (N.D. Cal. June 17, 2014) (holding that Facebook data policy did not qualify as VPPA consent).

*Third*, even Defendant's current privacy policy fails to establish consent under the VPPA. The statute requires informed, written consent (including electronic consent) given "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). Defendant's privacy policy neither constitutes a form distinct and separate from other legal obligations, nor provides a standalone mechanism by which users may grant, or withhold, VPPA consent. Instead, any purported consent is embedded within a broader policy governing numerous unrelated legal terms, conditions, and disclosures.[1] *See*

---

[1] The current version privacy policy imposes additional affirmative obligations and conditions on users. For example, it conditions access to paid services on mandatory disclosure of personal information, stating: "To sign up for a subscription or make a purchase, you must create an account by providing us with your full name, email address and creating a password." It further provides for unilateral modification through continued use: "Your continued use of the Service after we make changes is deemed to be acceptance of those changes." And it conditions the exercise of statutory privacy rights on compliance with verification procedures: "To process your request, we must be able to verify your identity as the owner of the account you are inquiring about." *See* https://www.racingamerica.com/privacy-policy (last visited: March 10, 2026).

*Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) ("It would also not be burdensome to design a website whereby consumers must click a box confirming their consent to disclosures involving video purchases and click a separate box confirming their consent to all other applicable policies and terms."). Such a bundled presentation does not satisfy the VPPA's requirement of discrete, informed consent.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety and permit this action to proceed on the merits.

Dated: March 12, 2026

Respectfully Submitted,

**WILKERSON JUSTUS PLLC**

By: */s/ David M. Wilkerson*
David M. Wilkerson
NC State Bar No. 35742
P.O. Box 54
Asheville, NC 28802
Telephone: (828) 316-6902
Email: dwilkerson@wilkersonjustus.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich*
Christopher DeVivo*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com

*Counsel for Plaintiffs*

**pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I, David M. Wilkerson, hereby certify that on March 12, 2026, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 12th day of March 2026.

By: /s/ *David M. Wilkerson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:25-CV-00096-CCD-JGM**

| | |
|---|---|
| MICHAEL WAMBOLD and ROBERT GUPTILL, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTA MEDIA HOLDINGS, LLC d/b/a RACING AMERICA,<br><br>Defendant. | **CERTIFICATE OF WORD COUNT** |

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that Plaintiffs' memorandum of law ("Motion") complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, the Motion contains 3,448 words. This count includes the body of the memorandum and headings, but does not include the caption, signature lines, or any certificates of counsel.

Dated: March 12, 2026

By: *<u>/s/ David M. Wilkerson</u>*
David M. Wilkerson
NC State Bar No. 35742
**Wilkerson Justus PLLC**
P.O. Box 54
Asheville, NC 28802
Telephone: (828) 316-6902
Email: dwilkerson@wilkersonjustus.com

Mark S. Reich (*pro hac vice*)
Christopher DeVivo*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com
*Counsel for Plaintiffs*
**pro hac vice* forthcoming