**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:25-cv-00096-CCE-JLW**

| | |
|---|---|
| MICHAEL WAMBOLD and ROBERT GUPTILL, On Behalf of Themselves and All Others Similarly Situated,<br><br>*Plaintiffs*,<br>v.<br><br>RTA MEDIA HOLDINGS, LLC D/B/A RACING AMERICA,<br><br>*Defendant*. | **DEFENDANT RTA MEDIA HOLDINGS, LLC'S REPLY TO PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO ITS OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f), AND/OR 23(c)(1)(A)**<br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO L.R. 7.3(c)(1)** |

Defendant RTA Media Holdings, LLC d/b/a Racing America ("RTA Media"), through undersigned counsel and pursuant to Rule 7.3(h) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, submits the following reply to Plaintiffs' Answering Brief in Opposition to Defendant RTA Media Holdings, LLC's Opening Brief in Support of Motion to Dismiss Class Action Allegations Pursuant to FRCP 12(b)(6), 12(f), and/or 23(c)(1)(A) ("Plaintiffs' Response"). ECF No. 36.

## <u>A</u>. <u>RTA Media provided Plaintiffs with evidence supporting Colin Smith's declaration that Plaintiffs agreed to the Terms of Service upon purchasing pay-per-view content or subscribing to the Website.</u>

Plaintiffs' Response argues Defendant "provides no screenshots, archived webpages, or other evidence showing how the alleged TOS were presented to users. Without such evidence, Defendant cannot establish as a matter of law that its purported clickwrap agreements are binding . . . A declaration reciting how the process purportedly

works, without contemporaneous screenshots or system records, is insufficient to carry Defendant's burden at this stage." *Id*. pp. 6-7. Defendant provided Plaintiffs with videos supporting Colin Smith's declaration in connection with the limited discovery the Court authorized to further explore the parties' arguments regarding the class action waiver. The videos, described in more detail below, demonstrate how RTA Media presented the Terms of Service to users purchasing pay-per-view content or subscribing to the Website, including Plaintiffs. RTA Media did not include these videos with its renewed Motion to Dismiss based on a concern that too much information outside the pleadings would convert its Rule 12 motion to a Rule 56 motion.[1]

In an attachment to Defendant's Brief in Support of its Motion to Dismiss, Colin Smith indicated that in order to purchase pay-per-view content or an annual or monthly subscription, "individuals must enter their billing and payment information and must also check a dialog box that confirms by proceeding with their purchase they agree to RTA Media's Terms of Service Agreement applicable to the Website." ECF No. 35-1, ¶ 11. "Exhibit A", manually filed with the Clerk's Office, documents the subscription process. It demonstrates that upon clicking on the "Subscribe Now" button, users are taken to a screen where they are prompted to select an annual or monthly subscription and input payment information to purchase the subscription. Exhibit A – Manually Filed with the Clerk's Office, 00:22 to 00:24. The video makes it clear that a user is unable to click on

[1] The videos are included as attachments to Defendant's reply based on Plaintiffs' representation that RTA Media offered "no evidentiary support" for its assertion that Plaintiffs assented to the Terms of Service.

the “Start Subscription” button until he or she creates an account or signs into an existing account, enters payment details, and checks a box indicating, among other things, the user “[b]y clicking ‘Start Subscription,’ [the user] agree[s] to our Terms of Service, acknowledge our Privacy Policy, and authorize your payment method to be charged.” *Id*. at 00:26 to 01:56. The words “Terms of Service” and “Privacy Policy” are also blue, indicating a hyperlink will take you to those respective policies if you click on the respective words. *Id*.

“Exhibit B”, manually filed with the clerk’s office, documents a similar process for pay-per-view content, though instead of checking a box indicating a user agrees to the Terms of Service and acknowledges the Privacy Policy, a box titled “Purchase Details” indicates “[b]y clicking ‘Complete purchase,’ you agree to our Terms of Service, acknowledge our Privacy Policy, and authorize your payment method to be charged”. Exhibit B – Manually Filed with the Clerk’s Office, 00:10 to 00:44.

The videos support Colin Smith’s declaration. The videos also make it clear that users, including Plaintiffs, were “‘explicitly advised that the act of clicking will constitute assent” to the agreement. *Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 222 (4th Cir. 2024) (quoting *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022))[]”, a distinction regarding the efficacy of “clickwrap agreements” that Plaintiffs highlighted in their response to Defendant’s opening brief in support of its motion to dismiss. ECF No. 35, p. 5. Phrasing such as “[b]y clicking ‘Start Subscription,’ [the user] agree[s] to our Terms of Service, acknowledge our Privacy Policy[]” and “[b]y clicking

‘Complete purchase,’ you agree to our Terms of Service, acknowledge our Privacy Policy[]” also provides an unambiguous manifestation of assent, a distinction Plaintiffs also highlight in their response. ECF No. 35, p. 6. It is also well established in the Fourth Circuit that when the “website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink, the user is on reasonable notice of those terms even if the user never reads them.” *Dhuvra v. CuriosityStream, Inc.*, 131 F.4th 146, 153 (4th Cir. 2025) (quoting *Marshall*, 112 F.4th at 220).

In combination with Colin Smith’s affidavit, the videos support RTA Media’s position that Plaintiffs agreed to the Terms of Service and Privacy Policy upon purchasing pay-per-view content or subscribing to the Website.

### **B. Plaintiffs continued to subscribe to the Website after RTA Media filed its Motion to Dismiss their claims based on the class action waiver in the Terms of Service.**

Plaintiffs’ Response also argues RTA Media “cannot retroactively impose a class waiver through terms allegedly accepted only after this action commenced[]” because it “would produce an untenable result: a company could retroactively impose arbitration provisions, class action waivers, or other material limitations on rights simply by adopting new terms after litigation has begun and then pointing to later user activity. Courts routinely reject such attempts to alter the parties’ rights through unilateral amendments adopted after a dispute is already pending.” While it appreciates Plaintiffs’ concern, RTA Media maintains this case is unique.

RTA Media filed its initial Motion to Dismiss and opening brief on June 30, 2025, which alleged, inter alia, that Plaintiffs could not maintain their class action allegations because they expressly waived such rights when they agreed to the Terms of Service on the Website. ECF No. 19, p. 2. Yet despite being on notice of RTA Media's position challenging their ability to maintain their class action allegations based on the class action waiver, Plaintiffs continued to subscribe to the Website, which by that point included Terms of Service indicating "[t]his Terms of Service Agreement . . . is between you and RTA Media Holdings, LLC." ECF No. 35-2 p. 8. Wambold purchased a monthly subscription on June 22, 2025, which expired on or around July 22, 2025. Guptill purchased an annual subscription on September 19, 2025.

The case Plaintiffs' Response cites to support its argument, *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005), supports RTA Media's position. In *Al Safin*, the employee, Mr. Al-Safin, signed an arbitration agreement before starting work for Circuit City Stores, Inc. ("Circuit City"). *Id*. 394 F.3d at 1256. Circuit City terminated Mr. Al-Safin in 1998, and took the position that the court should apply either an arbitration agreement modified in 1998, or an arbitration agreement modified in 2003, to Mr. Al-Safin's claims. *Id*. The appellate court concluded that "posting a written notice at Circuit City locations" and "including a copy of the modification [to the arbitration agreement] in its Applicant Packet" may have provided "reasonable notice" to current and prospective employees, but it was not "reasonable notice" to former employees like Mr. Al-Safin. *Id*. 394 F.3d at 1261. "That is, it is not reasonable to expect former employees of Circuit City

to check the postings at a Circuit City store every December, nor is it reasonable to expect that a terminated employee would review an Applicant Packet, to determine if Circuit City decided to amend its arbitration rules and procedures. Thus, as to former employees like Al-Safin, there was no valid offer to amend the 1998 DRRP. Moreover, Al-Safin did not continue his employment with Circuit City, sign an acceptance, or accept the modification of the 1998 DRRP in any other way." *Id*.

Mr. Al-Safin, did not receive notice of modifications to an arbitration agreement because he no longer worked at Circuit City. Here, Plaintiffs continued to subscribe to the Website even after filing a lawsuit expressing concerns over Defendant's alleged data sharing practices. Plaintiffs also continued to subscribe to the Website despite knowing RTA Media was challenging their ability to bring class action allegations based on a class action waiver in the Terms of Service. Guptill even purchased an annual subscription on September 19, 2025. These actions by Plaintiffs, even after being put on notice of Defendant's position, makes Plaintiffs' cases unique, and Plaintiffs' concern about "untenable results" unavailing.

**CONCLUSION**

Based on the foregoing, RTA Media respectfully requests the Court either dismiss or strike Plaintiffs' class action allegations and deny their ability to seek class certification pursuant to Rule 12(b)(6), Rule 12(f) and/or Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure, together with any and all other relief that it deems just and appropriate.

This 26th day of March, 2026.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

*/s/ Spencer H. Hoisington*
Spencer H. Hoisington, N.C. Bar No. 43481
Chanda L. McClain, N.C. Bar No. 56537
227 W. Trade St., Ste. 1830
Charlotte, North Carolina 28202
Telephone: (704) 302-1289
Spencer.Hoisington@wilsonelser.com
Chanda.Mcclain@wilsonelser.com
*Attorneys for Defendant RTA Media Holdings, LLC d/b/a Racing America*

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing was electronically filed using the Court's electronic filing system which will electronically serve the following counsel of record:

David M. Wilkerson
Wilkerson Justus PLLC
PO Box 54
Asheville, NC 28802
dwilkerson@wilkersonjustus.com

Mark S. Reich
Levi & Korsinsky, LLP
33 Whitehall Street, Floor 17
New York, NY 10004
mreich@zlk.com

In addition, I served the following counsel, who have not yet appeared in this action, via electronic mail on the same day:

Gary S. Ishimoto
Alyssa Tolentino
Levi & Korsinsky, LLP
33 Whitehall Street, Floor 17
New York, NY 10004
gishimoto@zlk.com
atolentino@zlk.com

This the 26th day of March, 2026.

*/s/ Spencer H. Hoisington*
Spencer H. Hoisington

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that the BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ACTION ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f) AND/OR 23(c)(1)(A) complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Document contains 1500 words. This count includes the body of the memorandum and headings, but does not include the caption, signature lines, or any certificates of counsel.

This 26th day of March 2026.

*/s/ Spencer H. Hoisington*

Spencer H. Hoisington