**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| MICHAEL WAMBOLD and ROBERT GUPTILL, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTA MEDIA HOLDINGS, LLC d/b/a RACING AMERICA,<br><br>Defendant. | Case No. 1:25-cv-96<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT RTA MEDIA HOLDINGS, LLC'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ALLEGATIONS PURSUANT TO FRCP 12(b)(6), 12(f), AND/OR 23(c)(1)(A)** |

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

I. The Motion's Supporting Documents ........................................................... 2

II. Plaintiff Wambold's Deposition Testimony ................................................. 3

III. RTA Media Deposition Testimony ............................................................... 3

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................. 4

CONCLUSION .......................................................................................................... 6

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Accordius Health LLC v. Marshall by & through Stirewalt*,
No. 1:20-CV-464, 2020 WL 7774401 (M.D.N.C. Dec. 30, 2020) ............ 5

*Charlotte Motor Speedway, LLC v. County of Cabarrus*,
748 S.E.2d 171 (N.C. App. 2013) ............ 4

*Degidio v. Crazy Horse Saloon & Rest., Inc.*,
880 F.3d 135 (4th Cir. 2018) ............ 6

*Franklin v. Duke Univ.*,
721 F. Supp. 3d 386 (M.D.N.C. 2024) ............ 5

*Galloway v. Snell*,
885 S.E.2d 834 (N.C. 2023) ............ 5

*Greenwood, Inc. v. IES Commercial, Inc.*,
609 F. Supp. 3d 401 (D.S.C. 2022) ............ 4

*Johnston Cnty. v. R.N. Rouse & Co.*,
414 S.E.2d 30 (N.C. 1992) ............ 5

*Murray v. Deerfield Mobile Home Park, LLC*,
860 S.E.2d 323 (N.C. App. 2021) ............ 3

*Orthodontic Ctrs. of Am. v. Hanachi*,
151 N.C. App. 133, 564 S.E.2d 573 (2002) ............ 4

*Rogers v. Tug Hill Operating, LLC*,
76 F.4th 279 (4th Cir. 2023) ............ 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ............ 1

Fed. R. Civ. P. 12(f) ............ 1

Fed. R. Civ. P. 23(c)(1)(A) ............ 1

Federal Rule of Civil Procedure 30(b)(6) ............ 1

Plaintiff Michael Wambold files this supplemental brief, in accordance with this Court's Revised Minute Entry dated April 28, 2026, in opposition to Defendant RTA Media Holdings, LLC d/b/a Racing America's ("Defendant's" or "RTA Media's") Motion to Dismiss Class Action Allegations Pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and/or 23(c)(1)(A) (the "Motion").

On July 14, 2026, counsel for Plaintiffs moved to withdraw Robert Guptill from this action. ECF No. 43. Counsel met and conferred with Defendant's counsel on July 7, 2026, advising that Guptill would be removed as a named plaintiff and that any supplemental briefing would apply solely to Plaintiff Wambold's claims.

## INTRODUCTION

Defendant cannot establish that Wambold agreed to arbitrate or to waive his right to pursue class claims against Defendant. The reason is simple: the only version of the Terms of Service ("TOS") Wambold could have encountered during the relevant time identifies Vimeo—an independent third party—as the contracting entity, not RTA Media. Indeed, in a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), RTA Media testified that the terms of service identifying Vimeo formed a contract between *Vimeo* and consumers and that RTA Media did "not necessarily" consider itself contractually bound by those terms until it inserted its own name in April 2025.

Defendant has no evidence that a different version of the TOS governed Wambold's purchases on the Racing America website (the "Website") during the period preceding the filing of the Complaint. The ***only*** version of the TOS identifying RTA Media as the contracting party did not come into existence until ***after*** the Complaint was filed. Accordingly, the Motion should be denied.

## STATEMENT OF FACTS

### I. The Motion's Supporting Documents

The Motion puts forth two different versions of the Website's purported TOS: (1) a version reading "Last Updated: April 2025" and stating "This Terms of Service Agreement ('Agreement') is between you and RTA Media Holdings, LLC." Smith Decl., Ex. A (the "Post-Complaint TOS"); and (2) a prior version reading "Last updated: Sep 1, 2022" and stating "This ***Vimeo*** Terms of Service Agreement (the 'Agreement' or 'Terms of Service') is made between *Vimeo.com, Inc.* ('Vimeo,' 'we,' 'us,' or 'our') and you, our customer." Supp. Smith Decl., Ex. B (the "Pre-Complaint TOS") (emphasis added).[1]

Vimeo, Inc. is a distinct entity and video technology company that provides website operators with infrastructure and tools to host and stream video content online. Compl. ¶¶ 6–7. Defendant elected to use Vimeo's "over-the-top" ("OTT") platform to host and deliver the video content available through its Website. *Id.*

The Pre-Complaint TOS was the only version in effect at all times prior to filing the complaint in which Plaintiff Wambold purchased video content on Defendant's Website. Although Plaintiff Wambold made one-time purchases in previous years (*see* Wambold Dep. Tr. (Ex. 1) at 11:20-22, 19:1-5, 20:2-14), Defendant's billing records show that he first purchased a monthly

[1] Defendant's Motion presents a screenshot of the Pre-Complaint TOS that may be misleading. Exhibit B of the Supplemental Smith Declaration contains a prominently highlighted heading reading: "RACING AMERICA (VIMEO) TERMS OF SERVICE AS OF 3/31/25." However, a version of the TOS obtained by Plaintiff's counsel from the Internet Archive's Wayback Machine, also dated March 31, 2025, contains no such additional heading or any reference to "Racing America." *See* Christopher DeVivo Decl., Ex. 1. The absence of that language in the archived version strongly indicates that the additional heading was superimposed by Defendant and was not part of the terms presented to users. By placing "Racing America" next to "Vimeo," the heading creates the false impression that users were aware they were contracting with RTA Media. The record, however, indicates that Plaintiff was presented with a TOS that referenced only Vimeo as the contracting entity.

subscription on April 22, 2025, and renewed it in May 2025—both dates ***after*** the Complaint was filed. Supp. Smith Decl. ¶ 4, Ex. A.

## II. Plaintiff Wambold's Deposition Testimony

On June 23, 2026, Plaintiff Wambold sat for a deposition. He testified that he recalls paying for content on the website, *see* Wambold Dep. Tr. at 11:20-22, 19:1-5, 20:2-14, and that he watched racing content on the website, *see id.* 19:24-20:1, 25:19-26:8. He further testified that he "do[esn't] want [his] data shared" and that he generally takes measures to protect his privacy on the internet, including using "an ad blocker," "a VPN," and, "depending on the site, . . . a virtual machine."[2] *Id.* at 34:11-21. Wambold does not recall encountering any terms of service or privacy policies, nor does he recall clicking a button or checking a box to indicate his assent with any such terms or policies. *See id.* at 28:5-29:23.

## III. RTA Media Deposition Testimony

On July 1, 2026, Plaintiff's counsel deposed RTA Media via its President and designee under Rule 30(b)(6), Colin Smith. RTA Media testified that, based on the language of the TOS, the pre-April 2025 version of the TOS was "an agreement between Vimeo and a Vimeo customer." RTA Media Dep. Tr. (Ex. 2) at 17:1-21. He also testified that, from 2020 to March or April of 2025, RTA Media did "not necessarily" consider the TOS to be a contract that it had entered into. *Id.* at 39:13-40:12.

## LEGAL STANDARD

A party seeking to enforce a contract bears the burden of proving the essential elements of a valid contract. *Murray v. Deerfield Mobile Home Park, LLC*, 860 S.E.2d 323, 329 (N.C. App. 2021); *see also Orthodontic Ctrs. of Am. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573,

[2] A "virtual machine" is "a computer hosted remotely that you can access from your computer." *Id.* at 34:18-21.

575 (2002) (same). Under North Carolina law, a valid contract requires mutual assent to the terms of the agreement. *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 748 S.E.2d 171, 176 (N.C. App. 2013). In determining whether the parties have agreed to arbitrate a particular dispute or, in this case, whether they have agreed to a class action waiver, federal courts apply state law principles of contract formation. *Greenwood, Inc. v. IES Commercial, Inc.*, 609 F. Supp. 3d 401, 406 (D.S.C. 2022).

## ARGUMENT

If Wambold assented to any TOS, that assent was to the Pre-Complaint TOS, thereby forming a contract, if any, with ***Vimeo***, not RTA Media. *See* Ex. B ("This Vimeo Terms of Service Agreement (the 'Agreement' or 'Terms of Service') is made between Vimeo.com, Inc. . . . and you, our customer."); *see also Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023) (reversing order compelling arbitration where the defendant was not a party to the arbitration agreement contained in the terms of service). Neither Defendant's Motion, its deposition testimony, nor any supplemental briefing in support of the Motion can remedy the fact that RTA Media chose to present users, including Wambold, with a version of the TOS that, by its plain language, bound them to an agreement with Vimeo, not Defendant.[3] Indeed, even RTA Media concurs that the language of the TOS creates a contract between Vimeo and its users, and that RTA Media was "not necessarily" bound by the TOS prior to April 2025. *See* RTA Media Dep. Tr. at 17:1-21, 39:13-40:12.

Assuming Wambold even encountered such terms (he does not recall doing so), he would have had no reason to believe that Defendant intended to bind him to a contract but simply forgot

[3] In fact, Exhibit C to the Supp. Smith Decl. illustrates the importance Vimeo placed on ensuring Defendant correctly represented its TOS. *See* Supp. Smith Decl., Ex. C ("We're reaching out to remind you about the importance of publishing ***your own*** Terms of Service, Privacy Policy, and Cookie Policy for your OTT site.") (emphasis added).

to update the contracting party's name in the terms. *See Galloway v. Snell*, 885 S.E.2d 834, at *288 (N.C. 2023) (stating when the language of a contract is clear and unambiguous, effect must be given to its terms and its terms may not be contradicted by parol or extrinsic evidence); *see also Johnston Cnty. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 34 (N.C. 1992) (same).

Defendant's argument in its Motion that "it is clear that Vimeo intended the content of the default templates, including the TOS, to benefit RTA Media and visitors to the Website" (Motion at 19), and that Plaintiff's assent to Vimeo's TOS therefore constitutes de facto consent to a contract with RTA Media, is pure speculation. Defendant cites no authority for the proposition that assent to one entity's terms automatically binds a user to a separate, non-signatory entity's arbitration clause or class action waiver.

Furthermore, Defendant's assertion that Wambold consented to the Post-Complaint TOS, and the class action waiver provision contained therein (*see* Motion at 18), based on alleged subsequent transactions occurring after the Complaint was filed, is without merit. First, Wambold does not recall encountering any terms of service or privacy policies, nor does he recall clicking a button or checking a box to indicate his assent with any such terms or policies. *See* Wambold Dep. Tr. at 28:5-29:23. Second, Defendant cannot retroactively impose a class waiver through terms allegedly accepted only after this action commenced. *See* ECF No. 1 (Plaintiffs' Complaint bearing a file date of February 7, 2025); *Accordius Health LLC v. Marshall by & through Stirewalt*, No. 1:20-CV-464, 2020 WL 7774401, at *4 n.2 (M.D.N.C. Dec. 30, 2020) (arbitration agreement signed after transactions completed would not apply retroactively because it did not include specific language providing for retroactive application). *Franklin v. Duke Univ.*, 721 F. Supp. 3d 386, 395 (M.D.N.C. 2024) (unilateral change to contract introducing arbitration provision rendered provision unenforceable because "[u]nder North Carolina contract law, just like under the FAA,

‘the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes.’” (citations omitted)).

Indeed, Defendant’s theory would produce an untenable result: a company could retroactively impose arbitration provisions, class action waivers, or other material limitations on rights simply by adopting new terms after litigation has begun and then pointing to later user activity. Courts routinely reject such attempts to alter the parties’ rights through unilateral amendments adopted after a dispute is already pending. *See Degidio v. Crazy Horse Saloon & Rest., Inc.*, 880 F.3d 135, 142 (4th Cir. 2018) (“Generally, arbitration agreements are signed before the commencement of any litigation. When such agreements are executed during the pendency of litigation, there is an increased risk that arbitration will operate not to expedite the resolution of disputes, but to prolong the entire process and to give defendants a second opportunity to contest unfavorable judgments.”).

Accordingly, absent evidence that Defendant was a party to, or an intended and enforceable third-party beneficiary of, the governing agreement, and because Defendant failed to meet its summary-judgment-like burden to establish Plaintiff’s consent to any TOS, its attempt to enforce the class waiver fails.

## **CONCLUSION**

Based on the foregoing, Plaintiff Wambold respectfully requests that the Court deny Defendant’s Motion in its entirety and permit this action to proceed on the merits.

Dated: July 15, 2026

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: *<u>/s/ Mark S. Reich</u>*
Mark S. Reich *(pro hac vice)*
Christopher DeVivo *(pro hac vice)*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com

David M. Wilkerson
NC State Bar No. 35742
**Wilkerson Justus PLLC**
P.O. Box 54
Asheville, NC 28802
Telephone: (828) 316-6902
Email: dwilkerson@wilkersonjustus.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Mark S. Reich, hereby certify that on July 15, 2026, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 15th day of July 2026.

By: /s/ *Mark S. Reich*